**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frederick Dean HAMILTON,
Defendant–Appellant.**

No. 92–6266.

United States Court of Appeals,
Tenth Circuit.

May 5, 1993.

Jerome T. Kearney, Asst. Federal Public Defender, Oklahoma City, OK, for defendant-appellant.

Edward J. Kumiega, Asst. U.S. Atty. (Joe L. Heaton, U.S. Atty., with him on the brief), Oklahoma City, OK, for plaintiff-appellee.

Before BALDOCK and BRORBY, Circuit Judges, and VRATIL, District Judge.*

BALDOCK, Circuit Judge.

Defendant Frederick Dean Harrison appeals his conviction for carrying a firearm during the commission of a crime of violence, 18 U.S.C. § 924(c)(1), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and also appeals his guideline sentence. Defendant claims: (1) there was insufficient evidence on

* The Honorable Kathryn H. Vratil, District Judge, United States District Court, District of Kansas, sitting by designation.

both counts because facts in the indictment were at variance with the evidence at trial; (2) the district court erred in denying his Fed.R.Evid. 404(b) motion to exclude evidence of other crimes; and (3) the district court erred in imposing a two level enhancement for possession of a stolen firearm, U.S.S.G. § 2K2.1(b)(4), a four level enhancement for possession of a firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(5), and a two level enhancement for obstruction of justice, U.S.S.G. § 3C1.1. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

On February 19, 1992, Defendant and two other inmates escaped from a West Virginia state prison where Defendant was serving three life sentences for murder. On February 24, 1992, after separating from the other inmates, Defendant broke into the home of Richard L. Porter in Benwood, West Virginia. Defendant stole a .38 caliber revolver from Mr. Porter and took Mr. Porter as his hostage and driver from the house at gunpoint.

Mr. Porter, under threat of death, drove Defendant to Erie, Pennsylvania, where Mr. Porter escaped in a mall parking lot by hitting the gas pedal the moment Defendant exited the car. After Mr. Porter's escape, Defendant, wielding a gun, accosted Greg Carson, who was waiting in a car outside an ice cream shop in Erie. After Mr. Carson got out of his car, Defendant drove off in it.

On February 25, 1992, Defendant robbed a Conoco service station, which carries products that have traveled in interstate commerce, located in El Reno, Oklahoma. The Conoco station was attended by Martha Sue Blair. Ms. Blair testified that Defendant entered the store and picked up a newspaper while another customer, Peggy Brantley, was paying for gas. Defendant then approached Ms. Blair after the customer left, told her it was her "lucky day," and put a Taco Bell bag on the counter which was accompanied by a pink pad that read, "Robbery" and "Put bills in paper bag." According to Ms. Blair's testimony, Defendant then took a gun out of his pocket and laid it on the newspaper. Ms. Blair further testified that she was very frightened, tried to dial 911 but failed, began beating on the window to attract the attention of the departing Mrs. Brantley, and screamed and mouthed words to indicate that she was being robbed. After Ms. Blair screamed at Defendant to get out, Defendant folded the newspaper over the gun, said "you win," and walked out of the service station.

Mrs. Brantley had witnessed Ms. Blair's panic and followed Defendant as he drove away. Mrs. Brantley, who is the wife of Calumet, Oklahoma's police chief, pursued Defendant while calling for help on her CB radio and calling out Defendant's license plate number to her nine-year-old daughter who was with her in the car. Defendant, who was driving the car he had stolen from Greg Carson, drove off Interstate 40 into a ditch and disappeared into the brush. Defendant was arrested the next day in a field near the scene of the wreck.

Defendant confessed to using a .38 revolver, obtained in a Benwood, West Virginia burglary, in the service station robbery. However, the gun was never found. At trial, Mr. Porter, whose Benwood, West Virginia home had been burglarized by Defendant, described his .38 that Defendant had stolen as a bluish-black, snub-nosed Cobra Colt that was functional and had brown plastic handles cut with a checkerboard pattern. Mr. Carson, an experienced gun user and military veteran, identified Defendant's gun as a .38 revolver with a two-inch barrel and small grips which he guessed was a Smith and Wesson but admitted also resembled a Cobra Colt. Ms. Blair, who was very shaken, crying and barely able to talk immediately after the robbery, initially told police that Defendant had threatened her with a large-frame semiautomatic gun. However, in later interviews with police and at trial, she stated that she was unsure of the type of gun other than it was a handgun. At trial, Ms. Blair described the gun as either dark gray or black with a checkerboard design cut into a brown handle. She further testified at trial that she knew the gun was heavy and made of metal when Defendant laid it on the counter. Both parties stipulated that there are no licensed manufacturers of guns in Oklahoma.

On April 23, 1992, the grand jury indicted Defendant for transportation of a stolen mo-

tor vehicle in interstate commerce in violation of 18 U.S.C. § 2312 (Count I), delay and affect of commerce by robbery in violation of 18 U.S.C. § 1951 (Count II), "knowingly us[ing] and carry[ing] a firearm, that is, .38 caliber revolver," during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count III), and felon in possession of a firearm, "that is, a .38 caliber revolver," which previously crossed state lines to reach Oklahoma in violation of 18 U.S.C. § 922(g)(1) (Count IV). Defendant represented himself at trial against the advice of stand-by counsel. In his opening statement to the jury, Defendant admitted to Counts I and II but asserted that he did not have a firearm when he robbed the convenience store and was therefore not guilty of Counts III and IV. Defendant argued that he was carrying a carved wooden replica of a large-frame semiautomatic gun that he had made while in prison and which did not fit the definition of "firearm" under 18 U.S.C. § 921(a)(3).[1]

After hearing all the evidence, the jury began deliberations. During deliberations, the jury sent a note to the court asking if they must find that Defendant used a .38 caliber revolver or merely a firearm to convict him of Counts III and IV. The court responded that they must find it was a .38 caliber revolver. The jury found Defendant guilty on all four counts.

Defendant's presentence report, as prepared by the probation office, recommended that the court sentence defendant under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).[2] The specifics of sentencing under the ACCA are provided in U.S.S.G. § 4B1.4. Under § 4B1.4(b), Defendant's offense level would be the greatest of either the offense level calculated under chapters two and three of the sentencing guidelines,

or thirty-four, because Defendant used or possessed a firearm in connection with a crime of violence. Defendant's total offense level as calculated under chapters two and three of the sentencing guidelines—after giving him an enhancement for using a stolen firearm, U.S.S.G. § 2K2.1(b)(4), an enhancement for using a firearm in connection with another felony offense, *id.* § 2K2.1(b)(5), and an enhancement for obstructing justice during trial, *id.* § 3C1.1—was thirty-two. Because Defendant's total offense level of thirty-two under chapters two and three was less than the offense level of thirty-four provided under the ACCA in U.S.S.G. § 4B1.4(b)(3)(A), the probation officer gave Defendant a total offense level of thirty-four.[3] With a criminal history category of VI, as provided for armed career criminals under U.S.S.G. § 4B1.4(c)(2), Defendant's guideline range was 262 to 327 months. At sentencing, the district court accepted the presentence report and sentenced Defendant to 300 months for Counts I, II and IV, and the mandatory consecutive 60 months for Count III, for a total of 360 months.

## I.

Defendant's first claim is that there was insufficient evidence to convict him of the firearms violations, because there was insufficient evidence to show that Defendant used a .38 caliber gun in the robbery as alleged in the indictment. We construe this argument to be an assertion that the indictment, which alleged that Defendant used a .38 caliber revolver, was at variance with the evidence presented at trial.[4]

■ "A simple variance occurs when the charging terms are unchanged, but the evidence at trial proves facts materially differ-

---

1. 18 U.S.C. § 921(a)(3) defines firearm in relevant part as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."

2. Defendant was sentenced as an armed career criminal because he had violated ·18 U.S.C. § 922(g) and had three previous violent felony convictions. 18 U.S.C. § 924(e)(1).

3. The presentence report reflects a downward adjustment for acceptance of responsibility.

However, at sentencing, in agreement with a government objection, the probation officer declined to recommend this two-point downward adjustment.

4. To dispose of this issue, we assume, as Defendant asserts, that the government presented evidence at trial that a firearm was used in the Oklahoma robbery, but not that a .38 caliber revolver was used.

ent from those alleged in the indictment." *Hunter v. New Mexico,* 916 F.2d 595, 598 (10th Cir.1990) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991). "Where a simple variance exists, 'convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.'" *Id.* at 599 (quoting *United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1814, 85 L.Ed.2d 99 (1985)). A variance will cause a conviction to be overturned only when the variance affects the substantial rights of the accused—*i.e.,* "only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy." [5] *Id. See also United States v. Whitman,* 665 F.2d 313 (10th Cir.1981); *United States v. Brewer,* 630 F.2d 795 (10th Cir.1980); *United States v. Morris,* 623 F.2d 145 (10th Cir.), *cert. denied,* 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980). "Proof of everything in the indictment is not required." *United States v. Smith,* 838 F.2d 436, 439 (10th Cir.1988). "When the language of the indictment goes beyond alleging the elements of the offense, it is mere surplusage and such surplusage need not be proved." *Id.* "[F]or purposes of barring a future prosecution, it is the judgment and not the indictment alone which acts as a bar, and the entire record may be considered in evaluating a subsequent claim of double jeopardy." *Whitman,* 665 F.2d at 318 (citations omitted).

■ Defendant makes no allegation that he was prejudiced by an inability to prepare his defense, and it is clear from the record that no such prejudice occurred. Defendant knew from the indictment he was being pros-

ecuted for firearms violations and was able to present evidence at trial that he had not carried a firearm, but had instead carried a wooden gun replica, during the robbery. Furthermore, under the record in this case, Defendant cannot be prosecuted again for carrying another type of firearm during the same robbery of the service station. Therefore, the government merely had to produce evidence at trial from which the jury could find beyond a reasonable doubt that Defendant had used a *firearm* during the robbery and was not required to prove that the firearm was a .38 caliber revolver.[6]

■ Defendant's confession, which was corroborated by the store clerk's testimony that Defendant was carrying a real gun which she knew was real because it sounded heavy and made of metal when he laid it on the counter, was sufficient evidence from which the jury could have found Defendant guilty of Count III. *See United States v. Gregg,* 803 F.2d 568, 571 (10th Cir.1986), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987) (government is not required to produce actual firearm at trial; witness identification of firearm is enough). The same evidence, combined with the parties' stipulation that there are no licensed manufacturers of guns in Oklahoma, was sufficient to convict Defendant of Count IV. *See id.* (proof that firearm is manufactured outside state in which possession occurred is sufficient to find that possession was in or affected commerce as required under 18 U.S.C. § 922(g)).

## II.

■ Defendant next alleges that the district court erred in denying his Fed.R.Evid. 404(b) motion to exclude Mr. Porter's testi-

---

5. A simple variance, which Defendant alleges occurred in this case, must be distinguished from a variance which rises to constructive amendment of the indictment. Constructive amendment occurs when the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment. *Hunter,* 916 F.2d at 599. Constructive amendment is reversible per se. *Id.* However, constructive amendment did not occur in this case because neither the evidence at trial nor the jury instructions implied that Defendant

could be convicted of anything other than knowingly using and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1).

6. Because the jury, following the court's instruction, found Defendant guilty of carrying and possessing a .38 caliber revolver, it necessarily found Defendant guilty of carrying and possessing a firearm.

mony that Defendant burglarized his house and stole his .38 caliber revolver. Rule 404(b) prohibits admission of other crimes evidence, unless admissible for purposes other than character, such as opportunity or identity.[7] Four factors are considered in determining the admissibility of prior act evidence: (1) whether the evidence is being offered for a proper purpose; (2) whether the evidence is relevant to that purpose; (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice; and (4) whether a proper limiting instruction is given upon request. *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). We will not disturb a district court's determination that evidence is relevant under Rule 404(b) absent an abuse of discretion. *United States v. Harrison*, 942 F.2d 751, 759 (10th Cir.1991).

 The testimony of Mr. Porter was admitted for the proper and relevant purposes of opportunity and identity. Mr. Porter's testimony showed that Defendant had the opportunity to obtain a firearm only twenty-four hours before the service station robbery and did so; therefore, showing that Defendant had access to a gun other than the wooden one he had carved in prison. Mr. Porter's testimony, together with Ms. Blair's testimony, indicated that it was Defendant who had robbed her and that Defendant had used a firearm, instead of a wooden gun, because Ms. Blair's description of the handle of the gun carried by the defendant in the robbery matched Mr. Porter's description of the handle of the gun Defendant had stolen from him. Furthermore, Mr. Porter's testimony, together with Mr. Carson's testimony, indicated that it was Defendant who had stolen Mr. Carson's car in that Mr. Porter testified to leaving Defendant stranded without a car in Erie, Pennsylvania, which is where Defendant accosted Mr. Carson and

stole his car, and in that Defendant used a .38 caliber revolver when accosting Mr. Carson. Furthermore, it appears from the record that the court gave a limiting instruction.[8] Therefore, we cannot find that the district court abused its discretion in determining that the probative value of Mr. Porter's testimony was not substantially outweighed by a danger of unfair prejudice.

### III.

Defendant's last three assertions are that the court erred in enhancing his sentence for possession of a stolen firearm, U.S.S.G. § 2K2.1(b)(4), possession of a firearm in connection with another felony offense, *id.* § 2K2.1(b)(5), and obstruction of justice, *id.* § 3C1.1. These assertions are baseless because Defendant was not sentenced under chapters two and three of the guidelines, the chapters which contain these enhancement provisions, but was instead sentenced as an armed career criminal under U.S.S.G. § 4B1.4, which contains no such enhancement provisions. *See United States v. Amos*, 984 F.2d 1067, 1072–3 n. 6 (10th Cir.1993) (obstruction of justice enhancement did not affect computation of Defendant's offense level because Defendant was sentenced under the ACCA, *i.e.*, U.S.S.G. § 4B1.4). Under U.S.S.G. § 4B1.4, Defendant received a base offense level of thirty-four, which is subject only to an acceptance of responsibility adjustment that Defendant did not receive.

AFFIRMED.

---

**7.** Rule 404(b) provides in relevant part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**8.** Although Defendant did not provide us with the jury instructions, as was his responsibility pursuant to 10th Cir.R. 10.2.6 (as amended Oct. 25, 1990), it appears from discussions contained in the trial transcript that such an instruction was given.