**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 12 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

TONY GLEN ADKINS,

        Defendant-Appellant.

No. 98-3322

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 98-CR-40041)

---

Steven Gradert, Assistant Federal Public Defender, (David J. Phillips, Federal
Public Defender, with him on the brief), Wichita, Kansas, for Appellant.

Anthony W. Mattivi, Assistant United States Attorney, (Jackie N. Williams,
United States Attorney, and Gregory G. Hough, Assistant United States Attorney,
on the brief), Topeka, Kansas, for Appellee.

---

Before **KELLY, McKAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Tony Glen Adkins was convicted as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The trial judge sentenced Adkins to a term of 180-months imprisonment followed by three years of supervised release. On appeal, Adkins raises four claims: (1) the trial court erred when it refused to give Adkins' proposed theory of defense jury instruction defining "possession" to exclude momentary control without criminal intent; (2) the court erred by allowing the government to introduce into evidence a rifle similar to the one for which Adkins was charged in the indictment; (3) the evidence presented at trial was insufficient to sustain a conviction; and (4) the court erred by applying an Armed Career Criminal enhancement in sentencing him. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** both the conviction and sentence.

## II. BACKGROUND

On March 2, 1998 in Onaga, Kansas, Tony Glen Adkins was driving a blue compact Chevrolet, with Sheila Tork riding in the passenger seat. Adkins collided with a parked trailer owned by Ernest May, who then called 911. Immediately after the collision, Adkins and Tork fled the scene. When Pottawatomie County Deputy Sheriff Cory Gilmore arrived, May was the only

person remaining. Deputy Gilmore ran a license check on the Chevrolet and determined an Elsie Bluma of Onaga was the owner.

Upon searching the abandoned Chevrolet, Sheriff's officers discovered six to seven lose 7.62 x 39 mm rifle rounds. Several minutes later, Bluma arrived at the scene. Bluma told officers she had loaned the car earlier that day to a Glen or a Glen Scott. Attempting to find Adkins and Tork, the officers went to Bluma's residence, where they located Tork but not Adkins. While at Bluma's house, the officers also discovered two or three more 7.62 x 39 mm rifle rounds.

On April 15, 1998, an agent of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") interviewed Jeff Comer at his business, J and J True Value Hardware. A federally licensed firearms dealer, Comer stated that on February 15, 1998, he sold an SKS Paratrooper, 7.62 x 39 mm rifle to Elsie Bluma, also providing her a complimentary box of ammunition. Comer further stated a white male, who Comer identified as Adkins, was with Bluma when she bought the rifle. At trial, Comer could not recall who carried the rifle from the store; Bluma testified Adkins must have done so.

On April 17, 1998, ATF agents and Sheriff's officers searched Bluma's residence, finding thirty-seven more 7.62 x 39 mm rifle rounds and three photographs of Adkins. Three weeks later, Adkins was arrested in Topeka, Kansas, though no rifle was ever found.

III.  ANALYSIS

A.  Jury Instructions

This court reviews a trial court's decision on whether to give a particular jury instruction for abuse of discretion and views the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 552 (10th Cir.  1999), *cert. denied*, No. 98-1829, 1999 WL 315531 (U.S. Oct. 4, 1999); *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1262 (10th Cir.  1999).

Adkins asserts the trial court erred in refusing to give his proposed theory of defense instruction, which in defining "possession" stated in relevant part, "Momentary, transitory, or temporal control of a thing, without criminal intent, is not possession."  Indeed, the trial court twice refused to give the jury this proposed instruction.  Initially, when deciding upon the proper jury charge, the court rejected Adkins' proposal.  Instead, the court gave a standard possession instruction which indicated in order to convict, the jury must find Adkins "knowingly possessed" a firearm and further defined both "possession" and "knowing," but did not mention the concept of "fleeting possession."  In his closing argument, however, defense counsel was allowed to and did argue that the government's evidence was insufficient, showing Adkins only temporarily possessed the rifle when he carried it from the hardware store to Bluma's vehicle.

During deliberations, the jury inquired about possession, and again, the trial court refused to provide them with Adkins' proposed instruction.[1] On appeal, Adkins maintains the court's failure to give his fleeting possession instruction may have led the jury to improperly convict Adkins based upon but a momentary possession.

A defendant is entitled to a theory of defense instruction when that instruction articulates a correct statement of the law and sufficient evidence has been presented to support the jury's finding in defendant's favor on that theory. *See United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999); *United States v. Swallow*, 109 F.3d 656, 658 (10th Cir. 1997). Although Adkins' fleeting possession instruction may indeed constitute a correct statement of the law, no possible interpretation of the evidence presented at trial could support an acquittal under that theory.

Courts which explicitly have accepted the fleeting possession theory define it this way: a jury must acquit a defendant charged with possession of contraband when the evidence demonstrates not only that the defendant merely momentarily possessed contraband, but also that the defendant either lacked knowledge that he

---

[1] The jury's question stated, "We are hung up on the matter of possession. We need help." The judge responded in writing, "Please refer to instruction no. 8 for assistance on the issue of possession. If, after reading this instruction, you have additional questions, you may send another message to the court."

possessed contraband or had a legally justifiable reason to possess it temporarily. In interpreting a statute virtually identical to 18 U.S.C. § 922(g), the Fifth Circuit did recognize the fleeting possession theory, but only when the possession was both temporary and justified for self-defense purposes. *See United States v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982). The Fifth Circuit earlier emphasized the knowledge or intent element of the fleeting possession theory when it discussed it in the context of a drug possession case: "[Defendant's] possession of the one [marijuana] cigarette was a mere fleeting possession, not inconsistent with honest intention or mere curiosity, and his throwing the cigarette away upon being ordered to stop is not, in our opinion, substantial evidence of a guilty knowledge or intent. Criminal intent is a sine qua non of criminal responsibility." *Rent v. United States*, 209 F.2d 893, 900 (5th Cir. 1954); *see also United States v. Parker*, 566 F.2d 1304, 1306 (5th Cir. 1978) ("That possession is momentary is immaterial" to prosecution for possession of unregistered firearm). Moreover, in an unpublished order and judgment addressing 18 U.S.C. § 922(g), this court noted "federal firearms laws impose 'something approaching absolute liability.'" *United States v. Marquez*, No. 90-1230, 1991 WL 145264, at *2 (10th Cir. Aug. 1, 1991) (cited as persuasive authority pursuant to 10th Cir. R. 36.3) (quoting *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983)).

Thus, even if a felon held a firearm for a mere second or two, unless that felon truly did not know that what he possessed was a firearm or there was some recognized legal justification for his holding the firearm, § 922(g) will still impose criminal liability. If, however, a felon who momentarily possessed a firearm genuinely lacked knowledge that he possessed a firearm or had a legally justifiable reason for possessing it, the fleeting possession theory would apply because the government would have failed in its burden of proving intent. Therefore, the court need only give a fleeting possession instruction when the evidence at trial supports a possible finding that the defendant only momentarily possessed the contraband, and in so doing, lacked either knowledge he possessed contraband or criminal intent to possess it.

Here, the one possible interpretation of the evidence which Adkins believes supports a fleeting possession theory in no way indicates his lack of criminal knowledge or intent. Even if the jury believed Adkins merely temporarily held the rifle as he carried it from the hardware store to Bluma's vehicle, there was no evidence suggesting Adkins either did not know the item he carried was a firearm or had some legal justification, negating criminal intent, to carry it.[2] The

---

[2] If, for example, Comer testified that, unbeknownst to Adkins, he had placed the rifle in a box or a bag which effectively veiled the nature of its contents, Adkins might be entitled to a fleeting possession instruction; a jury could interpret this evidence as demonstrating Adkins did not know he possessed

(continued...)

-7-

evidence that was presented regarding Adkins' activity at the hardware store could only support two possible conclusions by the jury: either Adkins never held the firearm at all, as he testified, or he did carry it to the car, fully cognizant that in his hands lay a firearm, as Bluma's testimony suggested. Because this evidence did not give rise to a possible inference that Adkins' possession was done either ignorantly, accidentally, or justifiably, the district court did not abuse its discretion in failing to give the fleeting possession instruction. The jury was then left with the responsibility of determining whether Adkins knowingly possessed the firearm.

### B. Demonstrative Evidence

This court will reverse a trial court's receipt of demonstrative evidence only for an abuse of discretion. *See United States v. Birch*, 39 F.3d 1089, 1092 (10th Cir. 1994). The government introduced into evidence a rifle similar to the one charged in the indictment, because the government never recovered the charged rifle. Unlike the charged rifle, however, the demonstrative rifle had a bayonet affixed to it and a slightly longer barrel. Bluma and Comer identified the

---

[2](...continued)
a firearm when carrying the box or bag to Bluma's vehicle. This court will not decide that issue, however, because no such testimony was elicited in this case.

demonstrative rifle as similar to the one which Bluma purchased from Comer while Adkins was present. Additionally, Bluma's neighbor, Will Kolterman, testified Adkins had come to his home carrying what Adkins called an SKS rifle, and Kolterman identified the demonstrative rifle as similar to the one Adkins carried that day. Both Comer and Kolterman pointed out to the jury that although the demonstrative rifle had a bayonet affixed to it, the firearm they had seen with Adkins did not. Adkins now asserts admission of the demonstrative rifle was error because it was not relevant for any permissible purposes, being only introduced to inflame the prejudices of the jury.[3]

---

[3] In his Appellate Brief, Adkins argues the demonstrative rifle "was merely offered to inflame the prejudice of the jury because of the nature of the weapon. It had no other relevance." It is unclear whether this constitutes a mere relevance claim under Rules 401 and 402, or whether Adkins wishes to appeal the receipt of the evidence under Rule 403. *See* Fed. R. Evid. 401, 402, 403. Nowhere in the Brief, however, does Adkins cite Rule 403 or even argue that the demonstrative rifle's probative value was substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Additionally, the trial court did not make any on-the-record Rule 403 findings, as is often done when a party raises a 403 objection below. *See United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998) (stating that in assessing Rule 403 challenges to Rule 413 evidence, "it will be particularly important for a district court to . . . make a clear record of the reasoning behind its findings."); *United States v. Roberts*, 88 F.3d 872, 881 (10th Cir. 1996) (per curiam) (requiring District Court to make such on-the-record 403 findings for analysis of Rule 404(b) evidence). Unfortunately, the record of Adkins' objection is unclear, as his only recorded objection to this evidence fails to suggest the specific reason for the objection. Although we will undertake a 403 analysis because Adkins asserts unfair prejudice, the trial court did not err by failing to make on-the-record findings, as there is no indication Adkins ever explicitly raised a 403 objection below. Consistent with his Appellate Brief, it is

(continued...)

As in this case, the government in *United States v. Hamilton* charged the defendant with violating 18 U.S.C. § 922(g), the indictment alleging Hamilton illegally possessed a .38 caliber revolver. *See* 992 F.2d 1126 (10th Cir. 1993) In rejecting Hamilton's argument that the government failed to prove he possessed the charged revolver, this court stated, "[T]he government merely had to produce evidence at trial from which the jury could find beyond a reasonable doubt that [the] [d]efendant had [possessed] a firearm . . . and was not required to prove that the firearm was a .38 caliber revolver." *Id.* at 1130. Therefore, although the government need not prove Adkins possessed the charged rifle itself, the demonstrative rifle was relevant to demonstrate Adkins possessed some firearm.

Specifically, the demonstrative firearm was relevant to the credibility of Kolterman, who claimed to have seen Adkins holding a rifle. Adkins testified and his defense counsel argued in closing that Adkins never possessed the firearm and that Kolterman lied about seeing Adkins with a rifle. By having Kolterman identify the demonstrative rifle as similar to the one which he claimed Adkins possessed while pointing out the differences and eliciting an entirely consistent description of the demonstrative and charged rifles from Bluma and Comer, the

---

[3](...continued)
far more likely Adkins simply stated a relevance objection to the trial court. Nonetheless, this court has "authority to conduct a de novo balancing where the trial court failed to make explicit findings to support a Rule 403 ruling." *United States v. Lazcano-Villalobos*, 175 F.3d 838, 847 (10th Cir. 1999).

government substantially negated the possibility that Kolterman had offered perjured testimony. In addition, the jury could better determine whether this witness in fact saw Adkins holding a rifle by viewing the size and shape of a firearm very similar to the one which Kolterman testified he saw in Adkins' hands. *See United States v. McIntosh*, 23 F.3d 1454, 1456 (8th Cir. 1994) (upholding admission of demonstrative firearm because it assisted jury in assessing witness credibility). Finally, by more definitively establishing that Adkins possessed the rifle at Kolterman's home, the government strengthened the inference that Adkins in fact carried the firearm from Comer's store to Bluma's vehicle. The demonstrative rifle was thus relevant for these permissible purposes.

Rule 403 states in relevant part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. This court has repeatedly warned that "Rule 403 is an extraordinary remedy and should be used sparingly." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988) (quotation omitted); *see also United States v. Rodriguez*, No. 98-2259, 1999 WL 765966, at *3 (10th Cir. Sept. 28, 1999) (quoting *Wheeler*'s cautionary language). The demonstrative rifle had significant probative value, as its introduction bolstered the credibility of three key witnesses – Bluma, Comer, and Kolterman. In addition, though surely it would have been preferable for the government to use an identical rifle to the one

which Adkins allegedly possessed, the government did reduce substantially the danger of any unfair prejudice by itself eliciting testimony that noted the discrepancies between the charged rifle and the demonstrative one. Therefore, even if the slightly longer barrel and the attached bayonet might be claimed to have inflamed unnecessarily the jury's prejudice, the danger of such prejudice did not substantially outweigh the probative value of this evidence, and thus, the trial court did not abuse its discretion in allowing the rifle's introduction.

C.  Sufficiency of the Evidence

In reviewing whether the evidence was sufficient to support the jury's verdict, "this court must review the record de novo and ask only whether, taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find [the defendant] guilty beyond a reasonable doubt." *United States v. Jenkins*, 175 F.3d 1208, 1215 (10th Cir. 1999) (quotation omitted).

To sustain a conviction under 18 U.S.C. § 922(g), the government must prove three elements: (1) the defendant previously was convicted of a crime punishable by imprisonment exceeding one year; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting

interstate or foreign commerce. *See United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996). Adkins only challenges the sufficiency of the evidence in proving the second element.

In *United States v. Mains*, this court held, "[T]he only knowledge required for a § 922(g) conviction is that the instrument possessed is a firearm." 33 F.3d 1222, 1228 (10th Cir. 1994). The government may prove either actual or constructive possession. *See United States v. Cardenas*, 864 F.2d 1528, 1533 (10th Cir. 1989). Constructive possession exists when the defendant knowingly has ownership, dominion, or control over an object and the premises where the object is found. *See United States v. Hager*, 969 F.2d 883, 888 (10th Cir. 1992).

At trial, Bluma, Comer, and Adkins himself all testified Adkins accompanied Bluma to Comer's hardware store on the day Bluma purchased an SKS Paratrooper, 7.65 x 39 mm rifle. Bluma acknowledged Adkins "must have" carried the rifle out to her car and placed it in her truck. She further stated she did not see the rifle again after the date of purchase and that Adkins was the only other person with keys to the truck in which he initially placed the rifle. Even if a reasonable jury heard and believed only Bluma's testimony and nothing else, it could conclude beyond a reasonable doubt Adkins knowingly possessed, both constructively and actually, a firearm. Additionally, Kolterman testified that Adkins later came to his house, showed him what looked like a rifle, and stated

that it was "his" SKS rifle which was purchased at Comer's hardware store. Again, this testimony alone could support a reasonable jury's determination beyond a reasonable doubt that Adkins knowingly possessed a firearm. Because the evidence presented at trial, viewed in a light most favorable to the government, proved this second element beyond a reasonable doubt, this court affirms the jury's guilty verdict.

### D. Sentencing Enhancement

Adkins challenges the trial court's application of an Armed Career Criminal enhancement under 18 U.S.C. § 924(e) and United States Sentencing Guidelines § 4B1.4, arguing the court improperly utilized his non-violent escape from a juvenile facility to qualify him for this enhancement. This court reviews *de novo* a sentence enhancement under 18 U.S.C. § 924 and examines the entire record and supporting documentation to determine the legitimacy of the trial court's sentence. *See United States v. Lujan*, 9 F.3d 890, 891 (10th Cir. 1993).

18 U.S.C. § 924(e) provides in relevant part, "a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . shall be . . . imprisoned not less than fifteen years . . . ." 18 U.S.C. § 924(e)(1). The statute then defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . involves conduct that

presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Further, § 4B1.4 of the United States Sentencing Guidelines establishes the appropriate offense level for an armed career criminal under 924(e). *See* U.S.S.G. § 4B1.4 (1997).

The trial court applied these two statutory and guideline provisions because Adkins had three prior felony convictions: felony escape, aggravated assault, and aggravated battery. Adkins contends his felony escape should not qualify as a violent felony, as it involved no acts of violence. This court, however, has held a felony escape, violent or not, necessarily constitutes a violent felony under the Armed Career Criminal enhancement, because such an escape always presents a serious potential risk of physical injury to others. *See United States v. Moudy*, 132 F.3d 618, 620 (10th Cir. 1998). Though acknowledging this precedent, Adkins claims *Moudy* was wrongly decided, arguing any felony could qualify as a violent felony under the *Moudy* reasoning. This panel, however, cannot overturn the decision of another panel of this court. *See United States v. Nichols*, 169 F.3d 1255, 1261 (10th Cir. 1999). Thus, this court affirms the trial court's application of the Armed Career Criminal enhancement and the sentence imposed.

IV. CONCLUSION

For the reasons set out above, the conviction and the sentence imposed by the United States District Court for the District of Kansas at Topeka, Kansas are hereby **AFFIRMED**.

No. 98-3322, United States v. Adkins

McKAY, Circuit Judge, concurring:

I join the proposed opinion except to express my disagreement with the assumption of the categorical statement in United States v. Moudy, 132 F.3d 618, 620 (10th Cir. 1998), which requires us to assume that felony escape "always constitutes 'conduct that presents a serious potential risk of physical injury to another.'" Id.; see also United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir. 1994) (adopting the reasoning of United States v. Aragon, 983 F.2d 1306, 1313 (4th Cir. 1993)). Consider, for example, state law that defines failure to return to work release or other inmate release program as felony escape. See, e.g., Colo. Rev. Stat. § 16-11-212 (1999) ("[A]ny willful failure to return to the jail or other facility may be punishable as an escape under section 18-8-208," which establishes five levels of escape, including three felony levels, according to the seriousness of the underlying offense); Kan. Stat. Ann. § 75-5269 (1997) ("The willful failure of an inmate to remain within the extended limits of his or her confinement or to return within the time prescribed to an institution or facility . . . shall be deemed an aggravated escape from custody as provided for in K.S.A. 21-3810," which defines aggravated escape as either a level 8 nonperson felony or level 6 person felony); N.M. Stat. Ann. § 33-2-46 (Michie 1998) ("Any prisoner whose limits of confinement have been extended, or who has been granted a

visitation privilege under the inmate-release program, who wilfully fails to return to the designated place of confinement within the time prescribed, with the intent not to return, is guilty of an escape. Whoever is convicted of an escape under the provisions of this section is guilty of a third degree felony . . . ."); Okla. Stat. Ann. tit. 57 § 510.1 (West Supp. 1999) ("Failure to return to the facility [from a work release or other permitted absence] shall be deemed an escape and subject to such penalty as provided by law [which defines most escapes as felony, see id. tit 21 §§ 434-445]."); Utah Code Ann. § 64-13-14.5(3) (1996) ("The willful failure of an inmate to remain within the extended limits of his confinement or to return within the time prescribed to an institution or facility designated by the department is an escape from custody," which is punishable as a first, second or third degree felony under § 76-8-309 (Supp. 1999)); Wyo. Stat. Ann. § 7-16-309 (Lexis 1999) ("The intentional act of an inmate of absenting himself without permission from either the place of employment or the designated place of confinement within the time prescribed constitutes an escape from custody of the institution [a felony under § 6-5-206]."). There is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody, as in this case, and of failure to return from authorized departure from actual custody. I do not wish to be seen as presuming that the latter felony is a

violent one under 18 U.S.C. § 924(e)(2)(B).  I consider such an interpretation to

be an abuse of language and a departure from the text of the statute.