**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAMION DWAN GILBREATH,

Defendant - Appellant.

No. 06-6269

(W.D. Oklahoma)

(D.C. No. 05-CR-201-F)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Circuit Judge, **PORFILIO** and **ANDERSON**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Damion Dwan Gilbreath was indicted for one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). After a

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jury failed to reach a unanimous verdict, a mistrial was declared. Prior to his retrial, Gilbreath pled guilty to possessing a firearm, knowing or having reasonable cause to believe it was stolen, in violation of 18 U.S.C. § 922(j). He was sentenced to 108 months' imprisonment, followed by three years of supervised release. Gilbreath appeals his sentence, which we affirm.

**BACKGROUND**

On October 8, 2005, Joe Gaddis of H & G Auto Center in Oklahoma City, Oklahoma, reported to an Oklahoma City police officer that there were problems with gang members congregating at his business after hours. Gaddis also indicated that he had learned that there was supposed to be a gang fight at his business that night and he asked if police officers could disperse anyone lingering around his business.

Later that same evening, police officers saw between eight and twelve people standing outside the H & G Auto Center. Because of the tip and the fact that some of the members of the group were wearing clothing associated with a known gang, the officers approached the group. As the officers approached, Gilbreath left the group and began walking away. As the officers got closer, Gilbreath changed directions and walked to the back of a pickup truck, where he reached underneath his shirt and then dropped an object on the bed of the pickup truck. The officers heard a loud metallic bang as the object hit the truck bed.

Believing that Gilbreath had just discarded a weapon, the officers ordered him to put his hands up and not move. A loaded Hi-Point .40 caliber semiautomatic pistol was found in the pickup truck bed. Authorities then arrested Gilbreath. They later discovered that the gun had been stolen.

As indicated, Gilbreath ultimately pled guilty to one count of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"), which calculated an advisory sentencing range under the United States Sentencing Commission Guidelines Manual ("USSG") (2005). The PSR calculated Gilbreath's base offense level as twenty-four, because he had at least two prior felony convictions for either a crime of violence or a controlled substance offense. Pursuant to USSG §2K2.1(b)(4), the offense level was increased by two. With a two-level downward adjustment for acceptance of responsibility, Gilbreath's total offense level was twenty-four. With a criminal history category VI, the advisory Guideline range was 100 to 120 months.

Gilbreath objected to the PSR, arguing that the "criminal history computation assessing criminal history points for each crime is not an accurate reflection of his criminal history." Addendum to PSR at 22, R. Vol. 4. He conceded that he was arrested and charged with felony drug possession on a number of occasions between 1993 and 1995, along with several misdemeanor charges for possession of marijuana, driving under the influence and/or while

having a suspended license, and bail jumping. However, he argued that, because they were all disposed of together in a single court proceeding in July 1996 which resulted in a one-year sentence, the cases should be viewed as a "continuing course of conduct." Id. at 23. He further argued that a series of cases in 1998 and 1999 "involving the use and distribution of marijuana, and on one occasion possession of Valium" also were resolved in a single judicial proceeding, resulting in a ten-year sentence. Id. He thus argued that virtually all of these cases were "related cases" under USSG §4A1.2, comment. n.3. Gilbreath argued his criminal history category should be a V, not a VI.

In response, the probation officer pointed out that the relevant USSG provision states that "prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense)." Id. at 24. The probation officer accordingly stated that Gilbreath's criminal history category was correctly assessed as category VI.

Gilbreath also argued that he should receive a departure or variance from the advisory Guideline range because his "possession of the firearm [lasted] for no more than a few minutes and the fact his criminal history is overstated." Id. The probation officer responded that Gilbreath clearly possessed the weapon no matter how many minutes it encompassed, he clearly pled guilty to possession of

the firearm, and he reiterated that Gilbreath's criminal history category was correctly calculated.

At his sentencing hearing, Gilbreath conceded that the intervening arrests rendered unavailable his argument that his prior convictions were related for purposes of assessing criminal history points. He continued to argue, as he had in his sentencing memorandum, that his criminal history category VI overrepresented his actual criminal history and was grounds for a downward variance. Gilbreath's counsel argued "there were a number of arrests for controlled substance violations, but . . . to the extent that there are ones that are simply for possession, those are more evident of his drug problem at the time as opposed to some sort of crime spree or preying on society." Tr. of Sentencing Hr'g at 6, R. Vol. 3.

The court reviewed Gilbreath's criminal history and made the following observations:

> So he's had nine felony prosecutions. Going by arrest dates in the felony cases, he has had nine opportunities to decide that he has seen the light. And the rationale really for the intervening arrest rule is that . . . as applied to this case, we don't treat these cases as related cases for purposes of . . . Guideline 4A1.2 rather because he felt the long arm of the law nine different times when he was arrested nine different times.
>
> . . . He got arrested on all those separate times and kept on committing crimes, which certainly dissipates any tendency to regard him, either for purposes of Guideline 4A1.2 or otherwise as being less culpable.

I recognize that I do have the discretion to depart downward based on the argument that the actual facts as to his criminal history show that the technical calculation of his criminal history overstates the seriousness of his criminal history. Recognizing that I do have that departure, I decline to depart downward. I believe that his criminal history, as set forth in the presentence investigation report, is not only technically accurate, it is also entirely fair as a factual matter.

Id. at 11-12.

Gilbreath's counsel then argued for a downward variance or deviation based upon the sentencing factors set forth in 18 U.S.C. § 3553(a).[1] He argued that the nature of and circumstances surrounding the instant offense support a downward variance, in that Gilbreath "possessed" the gun very briefly, he had a very difficult childhood environment where he experienced early exposure to gangs and gang activities, and that he is committed to helping raise his three young children.

The court then recited all the sentencing factors contained in § 3553(a) and stated:

---

[1]We have recently explained the difference between a departure and a variance from an advisory Guideline range:
    [W]hen a court reaches a sentence above or below the recommended Guidelines range through application of Chapter Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a "departure." When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a "variance."
United States v. Atencio, No. 05-2279, 2007 WL 102977, at *5 n.1 (10th Cir. Jan. 17, 2007).

Applying all those factors and giving appropriate weight to the United States Sentencing Guidelines on an advisory basis, the sentence I intend to impose is a sentence of 108 months of incarceration, which is toward the lower end of the guideline range.

The reason for that . . . is adequately expressed by an analysis of the facts which brought this defendant to a total offense level of 24 and a criminal history category of 6. I, for that reason, do not rest on the guidelines alone in determining that 108 months is an appropriate sentence in this case.

Id. at 24.

Gilbreath appeals, arguing essentially the same argument he made to the district court at sentencing: "Was the district court's sentence of 108 months' confinement reasonable in light of the temporary nature of the possession of the firearm and the fact a criminal history category of VI overrepresented Mr. Gilbreath's criminal history[?]" Appellant's Br. at 1.

**DISCUSSION**

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the formerly mandatory federal sentencing Guidelines are now advisory. "Post-Booker, we review sentencing decisions for reasonableness, which has both procedural and substantive components." Atencio, 2007 WL 102977, at *6. "In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set

forth in § 3553(a)." Id. "A substantively reasonable sentence ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case." Id.

Because district courts continue to calculate a Guidelines sentence as part of their determination of a reasonable sentence, "we continue to review the district court's application of the Guidelines de novo, and we review any factual findings for clear error." United States v. Townley, 472 F.3d 1267, 1275-76 (10th Cir. 2007). Where a district court "correctly applies the Guidelines and imposes a sentence within the applicable Guideline range, that sentence 'is entitled to a rebuttable presumption of reasonableness.'" Id. at 1276 (quoting United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam)).[2]

Gilbreath does not appear to make a procedural challenge to the district court's calculation of his sentence. He only challenges the 108-month term on substantive grounds, given the circumstances surrounding the offense and his allegedly overrepresented criminal history. We conclude that Gilbreath has failed to rebut the presumption of reasonableness accorded to his within-Guideline-range sentence. The district court heard extensive argument, both written and oral, from Gilbreath's counsel on why a variance or departure was warranted. The district court went through all the relevant factors and explained thoroughly

---

[2]To the extent Gilbreath argues that his sentence is unreasonable in part because the district court refused, in its discretion, to depart downward, we lack jurisdiction over that claim. United States v. Chavez-Diaz, 444 F.3d 1223, 1229 (10th Cir. 2006). However, "we have jurisdiction post-Booker to review the sentence imposed for reasonableness." Id.

why it did not believe that Gilbreath's criminal history category overrepresented his actual criminal history at all. Despite multiple arrests, charges and two prison terms, Gilbreath continued to violate the law. Moreover, nothing in the circumstances of the current offense, including the brevity of his possession of the firearm, convinces us that the sentence is unreasonable.[3] Gilbreath indisputably possessed the weapon, as he pled guilty to that crime. In short, whether or not a presumption of reasonableness applies to the within-Guideline range sentence, the sentence imposed in this case is reasonable, in light of all the 18 U.S.C. § 3553(a) factors.[4]

---

[3]We have stated before that, in the context of a felon-in-possession prosecution, "'even if a felon held a firearm for a mere second or two, unless that felon truly did not know that what he possessed was a firearm . . . § 922(g) will still impose criminal liability.'" United States v. Williams, 403 F.3d 1188, 1194 (10th Cir. 2005) (quoting United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir. 1999)). Gilbreath relies upon Williams, in which we reversed a 210-month sentence and remanded for resentencing. Williams is factually distinguishable from this case and presented a much more compelling case for resentencing than does Gilbreath.

[4]We note that the Supreme Court has recently heard oral argument in two cases which may impact the way we review sentences after Booker. See United States v. Rita, 177 Fed. Appx. 357 (4th Cir.), cert. granted, 127 S. Ct. 551 (2006) (No. 06-5754); United States v. Claiborne, 439 F.3d 479 (8th Cir.), cert. granted, 127 S. Ct. 551 (2006) (No. 06-5618).

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence in this case.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge