UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

JESUS MANUEL RODRIGUEZ,

      Defendant-Appellee.

No. 98-2259

ORDER
Filed September 28, 1999

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

Appellant's motion to publish the order and judgment filed on September 1, 1999, is granted. The published opinion is attached to this order.

Entered for the Court
PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**SEP 1 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

JESUS MANUEL RODRIGUEZ,

      Defendant-Appellee.

No. 98-2259

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-98-436-LH)**

---

James R.W. Braun, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the briefs), Las Cruces, New Mexico, for Plaintiff-Appellant.

Barbara A. Mandel, Assistant Federal Public Defender (Ann Steinmetz, Federal Public Defender, and Shari Lynn Allison, Research and Writing Specialist, with her on the briefs), Las Cruces, New Mexico, for Defendant-Appellee.

---

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      After indicting Defendant-Appellee Jesus Manuel Rodriguez ("Rodriguez")

on one count of illegal importation and one count of illegal possession of

marijuana, the government notified Rodriguez of its intent to introduce expert testimony as to the domestic street value of the 51 kilograms of marijuana that he was accused of illegally importing and possessing. Rodriguez filed a motion in limine pursuant to Fed. R. Evid. 403 to exclude the government's expert testimony regarding the value of the seized marijuana, which the district court granted. The government appeals, and we reverse and remand.

## BACKGROUND

On May 27, 1998, Rodriguez, driving alone in a 1992 Chevrolet truck that he did not own, entered the Columbus, New Mexico Port of Entry. There, Customs Inspector Fernando Vidalez had his suspicion piqued when he observed that the bolts to the gasoline tank had been recently removed. Using a fiber optic scope to probe the inside of the truck's gas tank, Inspector Vidalez noticed several packages wrapped in plastic. This led to a full-blown search of the truck's gas tank, which revealed 127 plastic-wrapped packages containing approximately 112 pounds (51 kilograms) of marijuana.

On June 17, 1998, Rodriguez was indicted on two drug related charges. Count I of the indictment charged Rodriguez with "unlawfully, knowingly and intentionally import[ing] 50 kilograms and more of marijuana . . . into the United States of America from . . . the Republic of Mexico," in violation of 21 U.S.C. §§

952(a), 960(a)(1) & (b)(3), and 18 U.S.C. § 2.  Count II of the indictment charged Rodriguez with "unlawfully, knowingly and intentionally possess[ing] with intent to distribute 50 kilograms and more of marijuana," in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and 18 U.S.C. § 2.

Prior to trial, the government notified Rodriguez that it intended to call expert witness United States Customs Special Agent Miguel Briseno to testify that the domestic street value of the 51 kilograms of seized marijuana was approximately $78,400.  Rodriguez responded by filing a motion in limine to exclude the government's expert testimony pursuant to Fed. R. Evid. 403.  In the motion, Rodriguez maintained that the government sought to admit evidence regarding the value of the marijuana in order to establish that Rodriguez had the requisite knowledge of the drugs in the truck's gas tank.  ("[T]he Government will argued [sic] that based on the value of the marijuana, no drug organization would entrust an amount of narcotics worth this much to someone who did not know the drugs were in the vehicle.")  Rodriguez claimed, however, that the value of the seized marijuana was not relevant to the issue of his knowledge and that any probative value the expert testimony might have would be substantially outweighed by unfair prejudice.

The government responded to Rodriguez's motion in limine by arguing that: (1) Rodriguez's claim that the value of the seized marijuana was irrelevant

to the issue of Rodriguez's knowledge was "directly contrary to Tenth Circuit authority," (citing United States v. Jones, 44 F.3d 860, 876 (10th Cir. 1995) (holding that district court did not abuse its discretion in admitting testimony regarding the value of cocaine because "expert testimony regarding the value of drugs is relevant to prove the drugs were intended for distribution")); (2) the value testimony was highly probative of Rodriguez's knowledge because "it is reasonable to conclude that no one would allow a person to unknowingly drive around in a truck containing approximately $78,400.00 worth of marijuana," (citing United States v. Castro, 972 F.2d 1107, 1111 (9th Cir. 1992) ("Government experts testified that that amount of cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe.")); and (3) the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of economy of time, because testimony regarding the value of the marijuana would speak directly to whether Rodriguez knowingly imported and possessed the marijuana with the intent to distribute it, which was the central issue of the case.

On September 22, 1998, the district court granted Rodriguez's motion and ordered excluded "all testimony by expert witnesses regarding the street value of the drugs seized," under Fed. R. Evid. 403. In granting the motion, the district court stated:

> [T]he Government's position that expert testimony as to the street value of the drugs seized demonstrates that Mr. Rodriguez knew the drugs were in the truck requires several inferential leaps. The Government's basic theory is that the drugs are so valuable that no one would entrust them to an unknowing dupe. Yet, the opposite inference is just as likely: the drugs at issue here are so valuable no one would knowingly drive them across the border himself. An individual who does not know the drugs are present is less likely to appear nervous when speaking with law enforcement officers and may therefore be more likely to successfully deliver the drugs. The opposite inference is based on the presumption that drug smugglers conduct their business with the same considerations as legitimate merchants or private individuals, a presumption which lacks an evidentiary foundation and belies common sense.
>
> The links in the chain which would connect this expert testimony to Mr. Rodriguez's state of mind are weak and attenuated. The probative value of the evidence is accordingly relatively low.

Balanced against what the district court considered insubstantial probative value, the court recognized that "evidence of the street value of the drugs seized is likely to confuse, mislead and inflame the jury," because the expert testimony "may carry an extra authoritative weight in the minds of jurors, [and] risks that jurors will attach undue significance to the evidence or convict merely based on their belief that the defendant is somehow connected to a 'drug ring.'" Further, the district court observed: "The evidence presents a substantial risk of *unfair* prejudice in that it may lead the jury to convict because they believe that Mr. Rodriguez is a 'bad man' or is involved with 'serious drug dealers,' not because the Government has proved the offenses alleged beyond a reasonable doubt."

The day after the district court filed its order granting Rodriguez's motion, the government filed its notice of appeal in the district court, which contained a certification that the "appeal is not taken for purpose of delay and that the evidence suppressed is a substantial proof of fact material in the proceedings."[1]

We have jurisdiction pursuant to 18 U.S.C. § 3731, and we now reverse and remand.

**MERITS**

"We review a district court's decision on Rule 403 for abuse of discretion." United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998). "However, despite the discretion afforded the district court, we have previously cautioned, 'Rule 403 is an extraordinary remedy and should be used sparingly.'" United States v. Roberts, 88 F.3d 872, 880 (10th Cir. 1996) (quoting Wheeler v. John Deere Co., 862 F.2d 1404, 1408 (10th Cir. 1988)).

The government asserts that the district court abused its discretion under Fed. R. Evid. 403 by excluding the proffered expert testimony as to the value of

---

[1]Pursuant to 18 U.S.C. § 3731, courts of appeals have jurisdiction to hear appeals brought by the United States in criminal cases "from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding."

the marijuana seized from the gas tank of the truck that Rodriguez was driving. In resolving whether the district court abused its discretion in excluding the government's proffered evidence, we must examine the interplay of Fed. R. Evid. 401 and Fed. R. Evid. 403. Cf. United States v. Levine, 970 F.2d 681, 688-89 (10th Cir. 1992) ("We review relevancy questions utilizing a two step analysis. First we ask: is the evidence relevant under Fed. R. Evid. 401, and, if so, should the evidence be excluded as unfairly prejudicial under Fed. R. Evid. 403?" (footnotes omitted)).

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, the government claims that the proffered expert testimony regarding the street value of the marijuana was relevant to prove that Rodriguez had knowledge of the presence of the marijuana in the truck that he was driving because no drug smuggler/dealer would place such a valuable load in the truck of an unknowing driver.

This court has recognized that the value of drugs found in a vehicle driven by a defendant is relevant to the issue of that defendant's knowledge of the presence of the drugs in the vehicle. See United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986) (DEA agent testimony that PCP found in truck driven by

defendant was worth $10,000 "supports the jury's finding that appellant knowingly possessed the PCP, since it is unlikely that the owner of the truck, or anyone else, would have left such a valuable substance in the truck").

In accord with <u>Hooks,</u> here we hold that evidence of the value of the seized marijuana was relevant to Rodriguez's knowledge of the drugs' presence, in that the expert testimony would have at least a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Accordingly, we find that the excluded expert testimony was relevant under Fed. R. Evid. 401.

Next, we turn to Fed. R. Evid. 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

As we have noted, the district court concluded that the probative value of the government's proffered expert testimony was "relatively low," based on its observation that equal and opposite inferences could be drawn from testimony regarding the value of the seized marijuana. We disagree. Here, Rodriguez's knowledge of the existence of the drugs in the truck apparently will be the critical issue in dispute in the trial. It appears that there is no direct evidence of his

knowledge, and thus the importance of any indirect evidence of his state of knowledge becomes magnified. The fact that conflicting inferences may be drawn from the value of the drugs is something left up to the parties to argue at trial, but it does not detract from the probative value of the evidence itself. Indeed, to the contrary, here both sides appear prepared to argue the probative value of this evidence at trial.

We have often recognized not only the relevance but also the importance of evidence of the value of the drugs in similar situations. See Hooks, 780 F.2d at 1532; see also United States v. Amaya-Sanchez, No. 97-2079, 1997 WL 774771, at **3 (10th Cir. Dec. 17, 1997) (unpublished disposition) (finding evidence sufficient to support conviction and stating, "it strains credulity to think that the owner of such a large amount of marijuana, worth over $100,000, would hide it in a truck and then loan that truck to an innocent Mr. Amaya-Sanchez, who would have at the least jeopardized the shipment once the truck encountered problems across the border."), cert. denied, 118 S. Ct. 1177 (1998); United States v. Pohlman, No. 95-2239, 1996 WL 534161, at **2 (10th Cir. Sept. 20, 1996) (unpublished disposition) (in rejecting a sufficiency of the evidence claim, the court stated: "The jury could have reasonably inferred that [the defendant] had knowledge based on a combination of [her] repeated trips through the Truth or Consequences checkpoint to learn the practices and procedures of the checkpoint,

her use of [her daughter] as a smokescreen to divert the agents' suspicions of her as a marijuana courier, her nervousness and agitation when stopped at the checkpoint, and her possession of over $150,000 worth of merchandise." (emphasis added)), cert. denied, 519 U.S. 1132 (1997). Other circuits agree with the relevance and importance of value evidence to prove knowledge. See United States v. Pollock, 926 F.2d 1044, 1050 (11th Cir. 1991) (finding evidence sufficient to sustain a conviction of possession with intent to distribute, and noting: "The most significant evidence supporting [the defendant's] knowing possession with intent to distribute is the large value of the cocaine. A jury reasonably could conclude that no drug smuggler would entrust a shipment worth a million dollars to an outsider."); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (concluding that evidence of drug value "was properly admitted as refuting the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States"); but see United States v. Littrell, 574 F.2d 828, 833 (5th Cir. 1978) ("[I]t might be an asset for . . . a courier to be uninformed about the nature of his delivery, since he would have no reason to be nervous or apprehensive about a task he believed to be perfectly legitimate.").

Next we balance the significant relevance of this evidence against the asserted unfair prejudice that would result to Rodriguez if it is admitted. As

noted, the district court found that the proffered expert testimony posed a danger of unfairly prejudicing Rodriguez by risking a conviction based on a belief that he associated with bad people or because he "is somehow connected to a 'drug ring.'" However, "the unfair prejudice aspect of Rule 403 cannot be equated with testimony which is simply unfavorable to a party," United States v. Flanagan, 34 F.3d 949, 953 (10th Cir. 1994) (internal quotation omitted), and here, evidence of the value of the drugs directly addresses an element of the offense — Rodriguez's knowledge. If that evidence is interpreted by the jury to connect Rodriguez to a drug ring or to bad people who smuggle drugs, that cannot be considered "unfair" prejudice since that is at the core of the criminal charges against him.

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." Roberts, 88 F.3d at 880 (internal quotations omitted). Here, we see no potential that the value of the seized drugs could serve to provoke an unfair emotional response against Rodriguez "wholly apart from [the jury's] judgment as to his guilt or innocence of the crime charged." He is accused of importing and possessing the very drugs that the government now wishes to value. Valuation is simply one of the descriptive ways of describing those drugs and the jury will know, in any event,

that there were 127 plastic-wrapped packages of marijuana totaling 112 pounds or 51 kilograms.  In light of this evidence that both sides agree may be introduced, we do not see how the introduction of evidence that this much marijuana has a street value of $78,400 could be unfairly prejudicial.

Fed. R. Evid. 403 allows the exclusion of relevant evidence only if its "probative value is <u>substantially outweighed</u> by the danger of unfair prejudice." Here, notwithstanding the deference that we owe to the trial court, we conclude that it was an abuse of discretion to exclude the evidence of value of the marijuana under Fed. R. Evid. 403.

Accordingly, we REVERSE the district court's order in limine excluding the evidence of the value of the seized marijuana and we REMAND for further proceedings.