**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 16 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TARANJIT SINGH BHATTI; KULDIP
SINGH VIRK,

      Defendants - Appellants.

Nos. 03-8023 & 03-8024
(D.C. Nos. 02-CR-151-01-B
& 02-CR-151-02-B)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

In these appeals which we have consolidated, Taranjit Singh Bhatti and Kuldip

Singh Virk[1] challenge their convictions after a jury trial for conspiracy to possess with

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). Case Number 03-8024 is therefore submitted without oral argument.

intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and

possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C). Mr. Bhatti and Mr. Virk contend the district court abused its discretion by

refusing to grant a mistrial prompted by the government's inflammatory remarks during

closing argument. Mr. Bhatti, alone, contends the court abused its discretion in failing to

hold a hearing under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to

determine whether a Wyoming special agent's testimony on the value of the marijuana

seized was reliable under Fed. R. Evid. 702. Having carefully read the record, we are

satisfied neither contention has merit and affirm.

## Facts

Taken in the light most favorable to the government, *United States v. Leach*, 749

F.2d 592, 600 (10th Cir. 1984), the facts developed at trial presented a narrative of two

Canadian commercial truckers, Mr. Bhatti and Mr. Virk, stopped by a Wyoming highway

patrol trooper for a traffic violation.[2] The stop culminated in a search of their rental van

which uncovered 220 pounds of a substance Defendants later stipulated was marijuana.

The government's characterization of the incident – Defendants repeatedly lying to their

wives, an INS official at the Canadian border, and law enforcement; the quantity and

value of the marijuana; and the implausibility of their explanation – established beyond a

---

[2] Because the parties are fully versed in the facts, only their outline is necessary to provide context for the issues raised in this appeal.

reasonable doubt they agreed to transport over 90 kilograms of marijuana. Defendants' portrayal presented them as hard-working Canadian truckers, unversed in the drug culture, who naively agreed to transport household goods for an anonymous individual who offered to pay them $5,000 Canadian for delivering the shipment to an unnamed sister in Denver, Colorado. This divergence in renditions left the jury to draw inferences and make those credibility determinations on which they were instructed.

In that credibility contest, the two scenarios particularly collided over the determination of whether Defendants' explanation they did not detect any odor of marijuana was credible. Mr. Virk, who testified with the assistance of an interpreter,[3] explained he did not recognize any nameable odor, never having smelled marijuana while growing up in Punjab, India, nor while living in Canada. In contrast, Wyoming Highway Patrol Trooper Ronnie Jones stated, shortly after stopping the vehicle, he "caught a brief smell of what I recognized to be marijuana" as he stood by the driver's window.

Perhaps to provide context for this clash, during closing argument, Mr. Bhatti's counsel attempted to explain to the jury why he had questioned the several law enforcement officers about their facility in detecting the odor of marijuana. Counsel stated,

---

[3] Both Mr. Bhatti and Mr. Virk spoke Punjabi although the testimony established Defendants, while not perfectly fluent in English, understood and spoke adequately. Mr. Bhatti did not testify.

Police officers – you know, I'm not going to embarrass any police officer or anybody . . . but what I was trying to get at with the police officers, both troopers, is the fact that just because they smelled the stuff in their past life, just because it is prevalent in our high schools, just because there's an aroma from it and just because they go to Desert Snow [drug training program] and just because they have a lot of experience in it and just because they can smell it does not mean that an individual that grew up in the province of Punjab, who rose up and goes to – comes to Canada, has a wife and two children – that doesn't mean that he has and knows what the smell of marijuana was like.

And also think, just because you smelled an unusual aroma there, remember, that stuff had been sitting in those bags . . . for a long period of time, at least since the 28th of July. That stuff has had a chance to permeate . . . remember the police officer, Trooper Jones, he walked up, he didn't smell it until he got up there and he says it was just a faint whiff and he didn't even smell it all of the time, just got a faint whiff a couple times.

So these two guys that are in a truck driving down the road who took a couple minutes to load it up, it is logical they wouldn't have smelled it. And even if they smelled the unusual smell, how did they know what it was because they're from Punjab province. They grew up there.

After further characterizing the evidence, defense counsel added:

One of the problems that Americans have – and I've done a lot of world travel – is that Americans have a real bad habit of thinking that everything about – that everything in the world is the same as it is here in the United States. That's not true.

Rebutting this argument, the prosecutor told the jury:

In the defense which I find somewhat bizarre is that only Americans know what marijuana smells like, only American high school kids know what marijuana smells like, only

- 4 -

American high school kids know what marijuana smells like. Canadians don't. Folks in India don't. I guess just Americans smoke marijuana. That's what the defense is. It is ridiculous. It is bizarre. It is bizarre.

There's one good thing, though, I will tell you. Because of a Wyoming trooper, Trooper Ronnie Jones, and his heads-up police work, that marijuana, that 200 pounds of marijuana is not going to go to any high school in the United States.

Immediately, counsel for Mr. Virk objected, and the court sustained the objection. Nonetheless, the prosecutor continued, "I guess we're back to the high schools then. Maybe it is coming from Canada to American high schools because only American kids smoke dope." Counsel for Mr. Bhatti and Mr. Virk objected and moved for a mistrial. The court sustained the objection and instructed the prosecutor to go on to another subject. The prosecutor responded, "it is a rebuttal of exactly what their defense is, nobody smelled it from Canada or India."

Following the jury verdicts, the court imposed sentence of 48 and 53 months respectively on Mr. Bhatti and Mr. Virk, three years of supervised release, fines, and special assessments for both. Defendants appealed their convictions under 18 U.S.C. § 3742(a) and Fed. R. App. P. 4(b).

## I. Improper Closing Argument

Mr. Bhatti and Mr. Virk contend the prosecutor's statements in his rebuttal closing argument were designed to inflame and prejudice the jury, encouraging it to decide the case on matters that were not in evidence. In support, they assert the jury's deliberating

for over a day demonstrates the difficulty it had in both determining credibility and making inferences supported wholly by circumstantial evidence. Coupled with additional remarks during trial about defense counsels' motives and strategy and repeatedly questioning Defendants' veracity, Mr. Bhatti and Mr. Virk insist the improper rebuttal tainted the jury's ability to decide the case dispassionately and deprived them of a fair trial.

Defendants rely on ***United States v. Gabaldon***, 91 F.3d 91 (10th Cir. 1998). Mr. Bhatti and Mr. Virk acknowledge that the statements are not reviewed in a vacuum, ***United States v. Manriquez Arbizo***, 833 F.2d 244, 247 (10th Cir. 1987), nor is the standard a perfect, error-free trial.

While characterizing the comments as perhaps "rhetorically excessive," the government responds they were brief, invited by Defendants' arguments, and "aimed solely at 'righting the scale.'" Reminding that a conviction should not be lightly overturned based on such comments, the government states the court amply instructed the jury on the role of arguments of counsel. Given the presence of strong evidence of guilt - - the jury heard testimony about Defendants' inconsistent stories, Defendants' lying to their wives and the INS agent, and the overwhelming presence of 220 pounds of marijuana whose odor seeped from the van - the government insists the comments had no bearing on the verdict.

"When defense counsel contemporaneously objects to a prosecutor's comment at trial and moves for a mistrial, we review a district court's decision to deny his motion for abuse of discretion." *United States v. Kravchuk*, 335 F.3d 1147, 1153 (10th Cir. 2003). To determine whether the comments amount to prosecutorial misconduct, we first examine whether the conduct was improper; and second, if improper, whether it requires reversal. *Id.*

On both steps, and after considering the trial record as a whole, *United States v. Hasting*, 461 U.S. 499, 508-09 (1983), we cannot say the court abused its discretion in denying the motion for mistrial. Like *Kravchuk,* in which the prosecutor told the jury that Kravchuk "lied and lied and lied," 335 F.3d at 1153, the prosecutor's remarks here "may have been responding to the credibility battle that defense counsel had been waging for the vote of the jury." *Id.*[4] Although we would not condone the prosecutor's "excessive hyperbole," the record confirms the statements were isolated and brief. Moreover, the court immediately sustained the objections and ordered the prosecutor to move on. *United States v. Kornegay*, 885 F.2d 713, 718 (10th Cir. 1989).

Given the strength of the evidence presented, the remarks, though farfetched, remain harmless. *Kravchuk*, 335 F.3d at 1154. "There is no need to examine in depth the

---

[4] Counsel for Mr. Bhatti questioned several witnesses to attempt to establish how they first discovered marijuana's pungent odor to explain Defendants' cultural differences. For example, asked when he first smelled marijuana, Trooper Jones responded it was in high school.

existence of error where the record convincingly shows that the asserted error, whether or not actually error, was harmless beyond a reasonable doubt." **Kornegay**, 885 F.2d at 719. *See also*, **United States v. Boyd**, 131 F.3d 951, 955, n.4 (11th Cir. 1997) (prosecutor's remarks in closing argument on fighting the war on drugs in the school "clearly intended to make the jury angry," were harmless in light of the overwhelming evidence of guilt). The district court did not abuse its discretion.

## II. *Daubert* Issue

The pivotal issue at trial was Mr. Bhatti's knowledge he transported approximately 220 pounds of marijuana. In a pre-trial hearing on Mr. Bhatti's motion in limine to exclude Wyoming Special Agent Kevin Haller's testimony on the value of the marijuana seized, the court focused on the foundation for and relevance of that evidence. After hearing arguments, the court found the testimony was relevant on the issue of co-defendants' knowledge and denied the motion, instructing the government to establish the foundation for Agent Haller's opinion when he testified.

At trial, Agent Haller described his eight-year experience investigating illegal narcotics trafficking, his state and federal training, his methods for interdicting drugs, and the range of drugs he has handled, including heroin, meth, cocaine, LSD, and marijuana. In his testimony, Agent Haller distinguished between the packaging and quality of marijuana originating in the Northwest and Canada from that coming from Arizona and California. He described Northwest marijuana's better quality, based on fewer buds,

seeds, and stems, and explained the differences in packaging. Based on his experience with Northwest marijuana, he opined the seized marijuana had a value of $300 to $400 per ounce. In his opinion, then, at $350 per ounce, the shipment had a total value of $1.2 million.

Mr. Bhatti now contends he asked for a hearing under Fed. R. Evid. 104 to determine the admissibility of this evidence under Fed. R. Evid. 702. Given the stipulation the drugs were marijuana, Mr. Bhatti contends the trial court erred by denying a hearing. He bases his argument on these points. First, "knowledge and information about the activities of drug dealers is beyond the 'common' knowledge of the average layman." Second, "assuming arguendo," the agent had sufficient expertise, the government failed to show this "was a reasonable opinion given the state of the pertinent art and scientific knowledge."

*United States v. Rodriguez*, 192 F.3d 946 (10th Cir. 1999), short-circuits Mr. Bhatti's argument. Reversing the trial court's exclusion of testimony of a drug's street value on the ground it was unfairly prejudicial, we held "evidence of the value of the seized marijuana was relevant to [defendant's] knowledge of the drugs' presence, in that the expert testimony would have at least a 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* at 949.

Thus finding the excluded expert testimony relevant under Fed. R. Evid. 401, we then examined the evidence under Rule 403: relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." That balancing supported our conclusion that "evidence of the value of the drugs directly addresses an element of the offense – [] knowledge. If that evidence is interpreted by the jury to connect Rodriguez to a drug ring or to bad people who smuggle drugs, that cannot be considered 'unfair' prejudice since that is at the core of the criminal charges against him." *Id.* at 951.

Although Mr. Bhatti distinguishes *Rodriguez* on the ground it did not address the issue under Rule 702, that distinction appears one crafted more for his appellate argument than on the trial record. The government extensively questioned Special Agent Haller on his experience and background in laying a foundation for his testimony on the value of the marijuana seized. We further note Mr. Bhatti's counsel did not cross examine Special Agent Haller about his methodology or challenge his experience. Given the relevance of the value of the drugs to the issue of knowledge as established in *Rodriguez*, Mr. Bhatti's contention is unfounded.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge