**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

TOMAS PONCE-GARCIA,

  Defendant-Appellant.

No. 06-2031
(D. N.M.)
(D.Ct. No. CR-04-1512 RB)

_____

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

  After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

  Appellant Tomas Ponce-Garcia was convicted of one count of importation

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of marijuana under 21 U.S.C. § 952(a) and § 960(a)(1) and (b)(3), and one count of possession with intent to distribute fifty kilograms and more of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(C). He now appeals his conviction, contending insufficient evidence supported the jury verdict. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Ponce-Garcia's conviction.

On May 5, 2004, Steve Ehrlich, a Bureau of Customs and Border Protection agent with twenty-five years of law enforcement experience, was on duty at the port of entry in Columbus, New Mexico. At trial, Agent Ehrlich testified that at 6:00 a.m. he noticed a red Chevy Cavalier, which he had seen entering the United States the day before, enter the primary lane for entry again into the United States. While the driver, Mr. Ponce-Garcia, explained to another agent that he was traveling to Deming, New Mexico, Agent Ehrlich noticed Mr. Ponce-Garcia was "sitting higher in the car than he had the day prior"; " the rear of the vehicle seemed lower than it had the day prior"; and "his head was almost to the roof of the car." Based on his experience with smugglers at the port, Agent Ehrlich suspected the vehicle contained some form of contraband. When Agent Ehrlich looked into the back seat of Mr. Ponce-Garcia's car with the aid of a flashlight, he saw ripples and humps which "were not normal." Meanwhile, another officer used a tool called a "buster" to check the corner of the rear seat and told Agent

Ehrlich the vehicle was "loaded" with contraband.  Agent Ehrlich then asked Mr. Ponce-Garcia to step out of the vehicle, handcuffed him, and escorted him into the main building.  Agent Ehrlich, who was trained to detect drivers under the influence of alcohol, detected neither the odor of alcohol nor any behavior indicating Mr. Ponce-Garcia was impaired during this period.

Agent Ehrlich further testified that when he returned and moved Mr. Ponce-Garcia's car to the secondary inspection area, he noticed the driver's seat was unusually high and "extremely hard to the touch," and the inside of the vehicle smelled "fairly strong" of marijuana.  A Vehicle and Cargo Inspection System (VACIS) image, or x-ray, of the vehicle showed the seats of the car were "extremely dense."  When officers searched the car, they found a total of 191 marijuana bundles, weighing 210 pounds, hidden in the back rests of the seats and between the foam padding and springs of the seats.  During trial, the government offered, without objection, a series of photos taken that day of Mr. Ponce-Garcia, his vehicle, and the contraband as it was removed from the seats in various stages.  Another agent testified the value of the marijuana totaled approximately $84,000, with the value increasing if the marijuana had been transported away from the international border.[1]

---

[1] Mr. Ponce-Garcia stipulated 191 bundles of marijuana, with a total weight of 210.5 gross pounds or 95.68 net kilograms, were found in the vehicle.

At trial, agents also testified smugglers often make "trial runs" through the port of entry to determine the type and thoroughness of the inspections, and the automated system at the port confirmed Mr. Ponce-Garcia's car crossed into the United States the day before at a similar time – 6:09 a.m. Agent Ehrlich also testified 6:00 a.m. is the time farm workers typically cross the border, but most of those workers travel in vehicles dirty from field travel and which contain several workers, their lunches, farm tools, and other personal items. In contrast, Mr. Ponce-Garcia drove alone in a clean car without personal items or tools.

After agents found the marijuana in his car, Immigration and Customs Enforcement Agents Alfredo Chavez, Jr., and Brian Thompson interviewed Mr. Ponce-Garcia. According to Agent Chavez, Mr. Ponce-Garcia appeared to understand his questions and did not seem to be under the influence of alcohol or drugs. He testified Mr. Ponce-Garcia told him he was unemployed and he bought the vehicle the day before at 4:00 p.m. in Mexico from a man named "Octavio" for $100. Although he claimed he was not planning to buy a vehicle in Mexico, he told the agent he could not pass up a deal that good. He also stated this was the first time he drove the vehicle across the border and did so for the purpose of traveling to Deming to change the vehicle papers to his name.

Agent Thompson testified "mules" are often used to transport narcotics and

defined a "mule" as someone hired to transport drugs across the border into the United States. He also testified the fingerprints of those acting as "mules" are not usually found on the concealed drugs because "mules" are not typically involved in packaging or concealing the drugs placed in the vehicle.

After the government concluded its case-in-chief at trial, Mr. Ponce-Garcia's counsel moved for a directed verdict of acquittal on grounds Mr. Ponce-Garcia did not admit knowledge of the existence of the contraband or hold title to the vehicle, and any incriminating evidence was destroyed when agents tore the vehicle's seats apart. The district court denied the motion, holding sufficient evidence established Mr. Ponce-Garcia knew about the contraband because he was the vehicle's sole occupant, it contained 191 bundles of marijuana which were obvious or could be felt, the vehicle smelled of marijuana, and Mr. Ponce-Garcia's statement he purchased the vehicle the day before negated the fact it was titled in someone else's name.

Mr. Ponce-Garcia then offered evidence in support of his case-in-chief through the testimony of Clarissa McClintock, the laboratory manager at Mimbres Memorial Hospital in Deming, New Mexico. She testified the blood test conducted on Mr. Ponce-Garcia the day of his arrest indicated a blood alcohol level of 52.3 milligrams per deciliter, which showed he experienced an elevated

level of alcohol which could interfere with medication or treatment but would not necessarily render an individual intoxicated or impaired.

At the conclusion of the trial, a jury convicted Mr. Ponce-Garcia of one count of importation of marijuana under 21 U.S.C. § 952(a) and § 960(a)(1) and (b)(3), and one count of possession with intent to distribute fifty kilograms and more of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(C). Prior to sentencing, Mr. Ponce-Garcia's counsel filed a motion for judgment of acquittal or a new trial on grounds insufficient or incompetent evidence supported the jury's verdict. In support of his motion, Mr. Ponce-Garcia claimed no competent evidence existed establishing the offense occurred in the United States and the District of New Mexico because: 1) the government did not offer the video recording of his entry and arrest as evidence; 2) the agent who first detained and questioned him did not testify at trial; and 3) another officer on duty the day before did not testify regarding Mr. Ponce-Garcia crossing the border the day before. Following the government's opposition to the motion, the district court issued a memorandum opinion and order denying Mr. Ponce-Garcia's motion for acquittal or a new trial. After reviewing the record, the parties' arguments, and the applicable law and then articulating in detail the evidence supporting the verdict, the district court determined substantial, competent evidence established Mr. Ponce-Garcia committed the criminal offenses for which he was convicted in

the United States and the District of New Mexico.

Next, a probation officer prepared a presentence report, calculating Mr. Ponce-Garcia's base offense level at 24 under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2D1.1(a)(3). After factoring in Mr. Ponce-Garcia's criminal history at Category I, the probation officer calculated his sentencing range at fifty-one to sixty-three months imprisonment.

Mr. Ponce-Garcia did not file formal written objections to the presentence report, but prior to sentencing his counsel submitted a letter requesting a role adjustment under U.S.S.G. § 3B1.2 for the purpose of reducing his sentence. At sentencing, his counsel argued a role adjustment was appropriate due to Mr. Ponce-Garcia's alcohol-related poor health, his lack of sophistication with respect to the marijuana organization, and his intoxication and inability to comprehend the circumstances at the time of the incident. In a cursory manner, his counsel also suggested insufficient evidence supported the jury verdict because no evidence established Mr. Ponce-Garcia's fingerprints were on the packaged and loaded contraband. After considering Mr. Ponce-Garcia's request for a role adjustment and the government's objections, the district court granted Mr. Ponce-Garcia a two-point role adjustment, resulting in a Guidelines range of forty-one to fifty-one months, and sentenced him to forty-one months imprisonment.

On appeal, Mr. Ponce-Garcia contests the district court's denial of his motion for acquittal on grounds the government presented insufficient evidence to support the jury's verdict. Instead of continuing his claim the offense happened outside the jurisdiction of this country and the district court, Mr. Ponce-Garcia now renews the same claim raised at trial – that the government presented no evidence to show he knew the marijuana was in the car at the time of his arrest. Specifically, he argues no prints, residue, or other physical link existed between Mr. Ponce-Garcia and the marijuana because: 1) the vehicle was titled to someone else; 2) irregularities in the vehicle were only visible with a flashlight, an x-ray machine, and other tools; 3) he was not acting nervously or suspiciously; 4) agents found no receipts or significant cash showing he smuggled narcotics; 5) no evidence established he noticed the raised seat and the smell of contraband, which he would not have noticed given his intoxication; and 6) no one identified him as the driver of the same vehicle the day before. Finally, he argues no reasonable person would place valuable contraband in a car with a drunk driver as a "mule" for the purpose of going through a checkpoint inspection.

To begin, we rely on our decision in *United States v. Serrata*, 425 F.3d 886 (10th Cir. 2005), in articulating the standard of review and other applicable law:

> We review de novo whether the prosecution presented sufficient evidence to support a conviction. In conducting this review ... we ask whether, taking the evidence – both direct and circumstantial,

together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. We will not re-weigh the evidence or assess the credibility of witnesses. Under this standard, we will not reverse a conviction ... unless no rational trier of fact could have reached the disputed verdict. The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt.

*Id.* at 895 (quotation marks and citations omitted). Because Mr. Ponce-Garcia presented his case-in-chief after the district court denied his motion for judgment of acquittal, he waived his right to limit our review to the government's case-in-chief alone, and we consider the entire record on appeal. *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1083 (10th Cir. 2004).

Applying these principles, it is apparent the evidence offered at trial reasonably supported the jury's finding of guilt beyond a reasonable doubt. As the district court pointed out, Mr. Ponce-Garcia was the driver and sole occupant of the vehicle, it smelled of marijuana and contained 191 bundles which were "obvious" in the seats or could be felt, and "Agent Ehrlich recognized the driver and the vehicle from the day before" and "[a]t trial, ... identified the driver as Ponce[-Garcia]." The district court further noted Agent Ehrlich also testified "the vehicle looked different than it did the day before because Ponce[-Garcia] was sitting higher in the vehicle and the back of the vehicle was riding lower." The

jury clearly credited this evidence, as well as Agent Ehrlich's testimony the driver's seat was unusually high and extremely hard to the touch, Mr. Ponce-Garcia's head almost touched the ceiling, and ripples and humps in the seats "were not normal," for the purpose of determining Mr. Ponce-Garcia knowingly committed the offenses for which it convicted him. The agents' use of an x-ray or imaging device, a flashlight, and a "buster" to assist them did not establish Mr. Ponce-Garcia had no knowledge of the existence of the bundles of marijuana, especially since their presence in the vehicle was obvious through smell, touch, and unassisted sight, as Mr. Ehrlich initially noticed the driver riding higher in his seat well before using the aid of a flashlight. In addition, even though the government did not provide evidence of Mr. Ponce-Garcia's fingerprints on the bundles of marijuana, it was not unreasonable for the jury to credit the testimony of another agent that fingerprints of "mules" transporting contraband are often not found on the contraband or its packaging.

In crediting the government's evidence, the jury also plainly rejected Mr. Ponce-Garcia's claim he bought the vehicle the day before in Mexico from a man named "Octavio" for $100 and it was the first time he drove the vehicle across the border. While Mr. Ponce-Garcia now contends he was too intoxicated to notice any signs the vehicle contained marijuana, the evidence at trial indicated he did not appear or act intoxicated and that while he may have had an elevated level of

-10-

alcohol which could interfere with medication or treatment, it was not necessarily a level which would render an individual intoxicated or impaired. In addition, we have long determined it is permissible to infer that the owner or driver of a vehicle has knowledge of the contraband found within it, especially in circumstances where there is a large amount of contraband with a high street value and the driver or owner is the sole occupant of the vehicle. *See United States v. Badilla*, 419 F.3d 1128, 1132 n.1 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1344 (2006); *United States v. Cota-Meza*, 367 F.3d 1218, 1224 (10th Cir.), *cert. denied*, 543 U.S. 876 (2004); *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999). Contrary to Mr. Ponce-Garcia's assertion, it is unlikely someone would entrust a vehicle containing such a large amount of high-value contraband to someone who did not know of its presence. *See Badilla*, 419 F.3d at 1132 n.1.

As to Mr. Ponce-Garcia's other contentions he was not acting nervously or suspiciously and agents found no receipts or significant cash showing he smuggled narcotics, such evidence was not necessary for a reasonable or rational jury to render a guilty verdict under the other circumstances presented, and, as previously stated, "[t]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt" but "only has to reasonably support the jury's finding

-11-

of guilt beyond a reasonable doubt." *Serrata*, 425 F.3d at 895. After considering the relevant direct and circumstantial evidence, "together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government," we can easily conclude "a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.*

For these reasons, we **AFFIRM** Mr. Ponce-Garcia's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge