**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Nos.   22-50239
24-5359

*Plaintiff-Appellee*,

v.

D.C. No.
3:17-cr-03707-
BAS-1

ALFRED VELAZQUEZ,

*Defendant-Appellant*.

OPINION

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

No. 22-50239 Argued and Submitted March 26, 2024
No. 24-5359 Submitted October 28, 2024[*]
Pasadena, California

Filed January 21, 2025

Before:  Susan P. Graber and Danielle J. Forrest, Circuit
Judges, and James V. Selna,[**] District Judge.

Opinion by Judge Selna

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

## SUMMARY[***]

### Criminal Law

Affirming the district court's admission of a Homeland Security Investigations Special Agent's testimony about the retail value of seized fentanyl, the panel held that district courts do not abuse their discretion when admitting evidence of the retail value of narcotics in cases confined to importation charges when that evidence is relevant, probative, and not unfairly prejudicial under the standards set forth in the Federal Rules of Evidence.

The panel held that in this case, the district court did not abuse its discretion when it ruled that the Special Agent's testimony was relevant and in concluding that the evidence of the retail value was not substantially outweighed by any prejudicial effect.

The panel addressed other issues in a concurrently filed memorandum disposition.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Mark R. Rehe (argued) and Blanca Quintero, Assistant United States Attorneys; Badih Mouannes, Special Assistant United States Attorney; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Tara K. McGrath, United States Attorney; United States Department of Justice, Office of the United States Attorney, San Diego, California; for Plaintiff-Appellee.

David A. Schlesinger (argued), Jacobs & Schlesinger LLP, San Diego, California, for Defendant-Appellant.

## OPINION

SELNA, District Judge:

The question before us is whether law enforcement experts can testify about the retail value of narcotics in cases limited to charges of importing illicit drugs. We answer that question "yes" and, accordingly, affirm.[1]

### FACTUAL BACKGROUND

Alfred Velazquez—a 34-year-old United States citizen residing in Tijuana—entered the United States from Mexico as the driver and sole occupant of a red Pontiac Firebird. The vehicle caught the attention of U.S. Customs and Border Protection Officer Sean Hanlon because of its surprisingly clean appearance and new registration for an older vehicle. Hanlon initiated contact with Velazquez, who provided

---

[1] We address all other issues in a concurrently filed memorandum disposition.

Hanlon with a temporary California driver's license and said that he was driving to the Department of Motor Vehicles ("DMV") to obtain new identification. In response to Hanlon's questions about ownership of the vehicle, Velazquez reported that the vehicle belonged to his cousin, but he was driving it because his own car was having problems.

While observing Velazquez's demeanor, Hanlon noticed that Velazquez's carotid artery was pulsing quickly, his hands were shaking when passing his papers, he was not maintaining eye contact, and he was fidgeting in his seat. This constellation of behaviors suggested to Hanlon that Velazquez was nervous.

Consequently, Hanlon conducted a "cursory search" of the vehicle and returned to speak with Velazquez. Upon his return, he noticed that Velazquez's carotid artery "was pulsing even faster after the cursory inspection." Hanlon then ran a database inquiry on the border-crossing history of Velazquez and the vehicle and learned that the Firebird had recently started crossing the border. Because this pattern mirrored the facts in other narcotics-seizure cases that Hanlon reviewed, Hanlon escorted Velazquez and his vehicle to the secondary inspection area.

On the way to the inspection area, Hanlon heard Velazquez say, "I don't know why you're messing with me. I'm just going to[] go hang out with my mom." Remembering that Velazquez had just stated his intention to go to the DMV, Hanlon asked about this change in his story. Velazquez said that he was first going to pick up his mother and then go to the DMV. Hanlon next conducted a thorough secondary inspection, which revealed oddities with the engine. Specifically, Hanlon noticed that some bolts

securing the intake manifold were "heavily tampered" with, as if the manifold had been worked on recently. Other bolts were missing, and there appeared to be fresh silicone around the manifold. This fresh material contrasted with the buildup of dirt on the rest of the engine. After Velazquez denied having any recent maintenance done on the vehicle, Hanlon called for a canine inspection. The dog immediately alerted its handler to the engine area.

Hanlon requested that a contract mechanic remove the intake manifold. Hanlon then found two "electric-tape wrapped packages" of a substance that field-tested positive for fentanyl. Hanlon arrested Velazquez and seized the vehicle. Officers seized 4.53 pounds of fentanyl from the Firebird during Velazquez's arrest. A lab analysis confirmed that the packages contained fentanyl and heroin. According to testimony at trial, the retail value of the fentanyl ranged anywhere from $405,888 to $608,832.

## PROCEDURAL BACKGROUND

The Government filed a complaint against Velazquez, charging him with violating 21 U.S.C. §§ 952 and 960 by importing approximately 2.58 kilograms of a mixture containing fentanyl. Shortly thereafter, the Government filed an information containing the same allegations against Velazquez. A grand jury also indicted Velazquez for importing 400 grams or more of a mixture containing fentanyl and one kilogram or more of a mixture containing heroin. At Velazquez's first trial, a jury convicted him of violating § 952. We reversed this conviction due to the prosecutor's misstatement of the reasonable doubt standard. *United States v. Velazquez*, 1 F.4th 1132 (9th Cir. 2021).

The Government tried Velazquez a second time. After deliberations, the jurors were split 7-5 in favor of conviction, and the district court declared a mistrial.

Velazquez was tried for a third time. The district court denied Velazquez's supplemental motion to exclude the retail value of the fentanyl found in the Firebird. The court reasoned that, under Federal Rule of Evidence 403, "the probable value" of the information "outweighed the prejudice of introduction." The Government subsequently presented evidence of the wholesale and retail value of the fentanyl through the testimony of Homeland Security Investigations Special Agent Peter Keisel.

After the jury returned a guilty verdict, the district court entered judgment and imposed a sentence of 139 months in custody and 5 years of supervised release. This timely appeal followed.

At oral argument, we remanded the case to the district court to consider a motion for new trial based on newly discovered evidence. The motion was made and denied. The resulting appeal was consolidated with the earlier appeal.

## STANDARD OF REVIEW

We review for abuse of discretion a trial court's decision to admit or exclude expert testimony. *United States v. Aubrey*, 800 F.3d 1115, 1129 (9th Cir. 2015). This is "[a] significantly deferential test that looks to whether the district court reaches a result that is illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

Velazquez advances three arguments as to why the district court abused its discretion when admitting Keisel's expert testimony about the retail value of the fentanyl: (1) the testimony was irrelevant; (2) the prejudicial effect of the testimony substantially outweighed its probative value; and (3) this court has not definitively held that testimony about the retail value of drugs is permissible when the defendant is charged only with importation-related crimes. All three arguments are unpersuasive.

### A. Ninth Circuit Law

Starting with his last argument, Velazquez asserts that there are no published opinions from this court in which a Government witness testified about the retail value of narcotics when the defendant was charged only with importation counts. He recognizes that we have published some cases ruling that law enforcement agents may testify about the street value of narcotics. Velazquez argues, however, that those cases are distinguishable because they involved either distribution-related counts or did not differentiate between wholesale and retail pricing. Accordingly, Velazquez asks us to evaluate the prejudicial effect of the retail value of narcotics in strictly importation cases to determine whether his conviction should be reversed.

In response, the Government points to a string of cases involving importation charges in which we held that the retail value of drugs is probative of a defendant's knowledge of the presence of narcotics. The Government relies primarily on *United States v. Ogbuehi*, 18 F.3d 807 (9th Cir. 1994). In that case, we held that law enforcement agents "can testify as to the street value of narcotics," *id.* at 812

(citing *United States v. Agyen*, 842 F.2d 203, 205 (8th Cir. 1988)), and "counsel can argue reasonable inferences from it," *id.*  The Government acknowledges that *Ogbuehi* also involved drug-distribution charges but asserts that the case applies here for three reasons.  First, we did not hold in *Ogbuehi* that the admission of the retail value of narcotics was restricted to distribution charges.  Second, *Agyen*, the Eighth Circuit case cited in *Ogbuehi*, involved only an importation charge.  And third, in an unpublished disposition, we have relied on *Ogbuehi* to conclude that expert testimony on the retail value of drugs is proper in importation-only cases.

In reply, Velazquez contends that, while it is true that we did not restrict the introduction of the retail value of narcotics to distribution cases, the inverse is also true.  That is, we never explicitly permitted such evidence in importation-only cases.

Although *Ogbuehi* involved both importation and distribution charges, *see* 18 F.3d at 808–09, we have previously employed a similar rationale for admitting the value of narcotics to prove knowledge, *see United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir. 1977) (ruling that "[e]vidence of the monetary value of illicit narcotics is relevant" to show the defendant's knowledge of possession of drugs); *Gaylor v. United States*, 426 F.2d 233, 235 (9th Cir. 1970) (holding that "evidence [of the street value of cocaine] was properly admitted as refuting the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States").

Our sister circuits follow the same rationale.  For example, in *Agyen*, the persuasive authority that we cited in

*Ogbuehi*, the Eighth Circuit held that a Drug Enforcement Administration Special Agent was qualified to testify about the "street" value of narcotics in a case in which the defendant was charged only with importation crimes under §§ 952 and 960. 842 F.2d at 205. The Tenth Circuit reached a similar conclusion in *United States v. Rodriguez*, 192 F.3d 946 (10th Cir. 1999), in which the defendant was charged with illegal importation and possession of marijuana. *Id.* at 947, 951. That court recognized that, when knowledge of the existence of drugs is a critical issue at trial and there is only circumstantial evidence of knowledge, any conflicting inferences about "the value of the drugs is something left up to the parties to argue at trial, but it does not detract from the probative value of the evidence itself." *Id.* at 950. The Tenth Circuit also concluded that, where "evidence of the value of the drugs directly addresses an element of the offense," such as the defendant's knowledge, it does not implicate the unfair prejudice aspect of Rule 403. *Id.* at 951. Although the evidence was unfavorable to the defendant, it could not be considered "unfair" prejudice because it went to "the core of the criminal charges against him." *Id.*

Considering our prior precedent and the persuasive decisions of other courts, we decline to adopt Velazquez's position that Government witnesses should not be allowed to testify about the retail value of seized narcotics in cases limited to importation charges. Although Velazquez was not charged with distribution, we are persuaded by *Kearney*'s reasoning that "[e]vidence of the monetary value of illicit narcotics is relevant to show a defendant's . . . knowledge of his possession of the [drugs]." 560 F.2d at 1369; *see also Gaylor*, 426 F.2d at 235 ("[S]uch evidence was properly admitted as refuting the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the

vehicle could be followed and the cocaine later recovered in the United States.").

Consequently, we conclude that district courts do not abuse their discretion when admitting evidence of the retail value of narcotics in cases confined to importation charges when that evidence is relevant, probative, and not unfairly prejudicial under the standards set forth in the Federal Rules of Evidence.

We now turn to Velazquez's argument that the retail value of the fentanyl in *this* case was both irrelevant and unfairly prejudicial.

### B. Relevance

The district court did not abuse its discretion when it ruled that Keisel's testimony was relevant to Velazquez's case. *See Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("The district court's application of the correct legal standard is an abuse of discretion if it is 'illogical,' 'implausible,' or 'without support in inferences that may be drawn from the facts in the record.'") (citations omitted). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, "[t]he Rule's basic standard . . . is a liberal one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993); *see also United States v. Whitehead*, 200 F.3d 634, 640 (9th Cir. 2000) (citing Rule 401 for the proposition that relevance is a "minimal requirement"). "Deciding whether a fact is 'of consequence in determining the action' generally requires considering the substantive issues the case presents." *Crawford*, 944 F.3d at 1077 (citation omitted).

Velazquez contends that the evidence contravenes Rule 401 because he was not on trial for any distribution or cartel-related activities. Therefore, he reasons, whether those who placed the drugs in the Firebird would *profit* from the retail value of the narcotics was "purely speculative, and therefore irrelevant."

We disagree. The retail value of the fentanyl satisfies Rule 401 because it tends to make Velazquez's *knowledge* of the drugs in his vehicle more probable. The large quantity of fentanyl, 4.53 pounds, was clearly intended for further distribution in the United States. This matters because, according to Keisel, the price of fentanyl rises significantly when it is distributed in smaller portions, which means that every level of the distribution chain stands to benefit from the retail value. The retail value of the fentanyl is relevant to Velazquez's knowledge because it makes it more likely, given the profits at stake, that he knew the packages were in his vehicle. His knowledge was consequential because it was a required element that the Government had to prove at trial. *See* 21 U.S.C. § 960(a) ("Any person who . . . knowingly or intentionally imports . . . a controlled substance . . . shall be punished as provided in subsection (b)."); *see also* Fed. R. Evid. 401; *Crawford*, 944 F.3d at 1077. Indeed, Velazquez's trial counsel opined during closing arguments that whether Velazquez knew there were drugs in the Firebird was "the only issue in this case."

The testimony was also relevant to rebut Velazquez's "blind mule" defense, which his trial counsel raised and Velazquez reiterated on appeal. Considering it is unlikely that those responsible for shipping the narcotics would risk placing such valuable cargo in the car of a stranger, *see Gaylor*, 426 F.2d at 235, the sheer monetary value of the seized fentanyl makes it more probable that Velazquez knew

about the drug-laden packages, *see* Fed. R. Evid. 401; *Ogbuehi*, 18 F.3d at 812; *Kearney*, 560 F.2d at 1369. Therefore, given the "liberal" standard of Rule 401, *see Daubert*, 509 U.S. at 587, it is apparent that the district court correctly determined that the retail value of the fentanyl was relevant and, thus, did not abuse its discretion, *see Hinkson*, 585 F.3d at 1262.

## C. Federal Rule of Evidence 403

The district court did not abuse its discretion when it concluded that the probative value of the evidence of retail value was not substantially outweighed by any prejudicial effect under Rule 403. Rule 403 "bars the admission of evidence when the danger of *unfair* prejudice *substantially* outweighs the probative value of the evidence." *United States v. Ubaldo*, 859 F.3d 690, 705 (9th Cir. 2017) (emphasis added). A district court's Rule 403 determination is afforded "great deference, because the considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues." *Hinkson*, 585 F.3d at 1267 (citation omitted; internal quotation marks deleted). "'Application of Rule 403 must be cautious and sparing' because the Rule's 'major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (alteration adopted) (citations omitted).

Velazquez contends that the district court's decision violated Rule 403 because the retail value was three times greater than the low-end wholesale value of the fentanyl. This difference in value was prejudicial, he contends,

because the Government sought to introduce the figure only to "shock the jury."

The Government counters that Velazquez's argument is flawed because the prejudicial value does not "*substantially* outweigh" the probative value of the evidence. It also asserts that the wholesale value, the admission of which Velazquez does not challenge on appeal, was already in the hundreds of thousands of dollars. Thus, it was not unduly prejudicial for the jury to hear the retail value, which was only "worth a few hundred thousand more." In addition, the Government points out that no one, including Keisel, suggested that Velazquez stood to realize the substantial profits from the retail value, which further reduced any *unfair* prejudice created by the testimony.

In reply, Velazquez argues that "a few hundred thousand" dollars may not be much to the Government, but for a typical juror it had a substantially prejudicial effect. He further asserts that, in a case where knowledge was the key issue, every piece of evidence affecting this element mattered.

Given the "'facts, circumstances, and issues'" of the case, we conclude that the district court did not abuse its discretion. *Hinkson*, 585 F.3d at 1267 (citation omitted). The retail value of the fentanyl substantiated the Government's argument that, despite Velazquez's claimed ignorance, the fentanyl was too valuable for the people placing it in the Firebird to trust it to someone who did not know it was there. *See Gaylor*, 426 F.2d at 235.

Keisel's testimony focused almost exclusively on his background and experience in investigating narcotics-smuggling operations, on how law enforcement determines the value of street drugs, and on why that value is important

to their work.  He did not offer any prejudicial information about Velazquez, such as his role in or knowledge of drug cartel operations, that would have substantially outweighed the probative value of his testimony.  *See, e.g.*, *United States v. Vallejo*, 237 F.3d 1008, 1017 (9th Cir. 2001) (holding that an agent's testimony about different roles played by various members of drug trafficking organizations was unfairly prejudicial because it implied that the defendant knew how the organizations operated).

In summary, we conclude that the retail value of the seized fentanyl was properly admitted under Rule 403.

## CONCLUSION

We affirm the district court's admission of Keisel's testimony about the retail value of the seized fentanyl.  The controlling principle here is that "expert testimony . . . is admissible when relevant, probative of a defendant's knowledge, and not unfairly prejudicial under the standard set forth in the Federal Rules of Evidence." *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1072 (9th Cir. 2011). The district court's decision to admit Keisel's testimony satisfied all three criteria and was not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Hinkson*, 585 F.3d at 1251.  Therefore, the district court did not abuse its discretion in ruling that the testimony was admissible.

**AFFIRMED.**